Michael W. Homer (#1535)
Jesse C. Trentadue (#4961)
*SUITTER AXLAND, PLLC*
8 East Broadway, Suite 200
Salt Lake City, UT  84111
Telephone: (801) 532-7300
Facsimile: (801) 532-7355
mhomer@sautah.com
jesse32@sautah.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| ANTHONY CHARLES MURPHY, <br><br>    Plaintiff, <br><br> v. <br><br> STG. D. ROBERTS; LT. TRAVIS GIVENS, <br><br>    Defendants. | **COURT-ORDERED MARTINEZ REPORT** <br><br> Case No. 2:19-cv-00852-JNP <br><br> Judge Jill N. Parris |

Defendants Daniel Roberts and Travis Givens hereby submit this court-ordered *Martinez Report* in further response to the allegations that Plaintiff Anthony Charles Murphy ("Murphy") has alleged against them in his *Amended Complaint*.[1]

## BACKGROUND

Murphy was convicted on May 4, 2016 in the First Judicial District Court of Cache County, Utah of aggravated sexual assault, aggravated kidnapping and forcible sex abuse, all felonies.  On June 27, 2016, Murphy was sentenced to what appears to be consecutive 15 year to

---

[1]  ECF-15.

100-year sentences and committed to the Utah State Prison to serve that sentence.[2]  Apparently due to his status as a sex offender, on March 15, 2019 Murphy was transferred to the Duchesne County Jail ("Jail") to serve the remainder of his sentence. [3]

Daniel Roberts was Duchesne County Deputy Sheriff assigned to work as a corrections officer in the Jail.  In addition to being a corrections officer, Roberts was also one of two Inmate Disciplinary Hearing Officers.  As an Inmate Disciplinary Hearing Officer, Roberts' duties were quasi-judicial in nature insofar as he adjudicated major disciplinary charges that had been brought or filed against Jail inmates.[4]

Roberts' underwent specific training to become an Inmate Disciplinary Hearing Officer. Part of the training that Roberts received to become an Inmate Disciplinary Hearing Officer included avoiding conflicts of interest such as presiding over a matter in which he had played a role, either directly or indirectly, by charging the inmate or having participated in the investigation that resulted in the bringing of disciplinary charges against that particular inmate. [5]

Lieutenant Travis Givens was the Jail Commander.  As the Jail Commander, his duties also included serving in a quasi-judicial capacity to review appeals by inmates from disciplinary sanctions imposed upon them.[6]  Pursuant to the Jail's "*Appeal Policy*" Givens' review was the last stage in the appeal process,[7] unless Givens referred the matter to an Administrative Law Judge for further review.[8]  However, Givens' decision to not refer an inmate's appeal from a

---

[2] *Summary of Convictions*, Exhibit A at pages 3-4.
[3] *Travel Order*, Exhibit B.
[4] *Roberts Dec.,* at ¶¶2, 24-26, 454 and 47.
[5] *Roberts Dec.,* at ¶¶ 24-25.
[6] *Givens Dec.,* at ¶¶ 3-4 and 12-13.
[7] *Appeal Policy,* Exhibit Q.
[8] *Givens Dec.,* at ¶¶

disciplinary sanction imposed upon them to an Administrative Law Judge was still reviewable by the Sheriff under the Jail's Grievance Policy.[9]

## ALLEGATIONS

In his *Amended Complaint*, Murphy alleges that Defendants Roberts and Givens violated his right to free speech, right to due process and right to the equal protection of the laws. These claims arise out of two incidents that occurred when Murphy was an inmate at the Jail.

The first incident occurred on occurred on July 17, 2019, when Murphy claims that Deputy Roberts came into F-Block of the Jail where Murphy was being housed and started cursing at the inmates. According to Murphy, when he asked Roberts not to speak to the inmates like that Roberts placed him in a three-day lock down and took away his "C-D" player.[10]

The second incident resulted from a fight between Murphy and another F-Block inmate named Melvin Whipple ("Whipple") for which both Murphy and Whipple were charged and convicted of fighting in violation of Jail Policy B02, and sanctioned with a 20-day lock down and $200.00 fine. Murphy claims that his civil rights were violated because: (1) Deputy Roberts failed to protect him from being assaulted by Whipple; (2) Deputy Roberts would not allow Murphy to call Utah Attorney General Sean Reyes or Professor Kyle Hancock, a clinical psychologist at Utah State University, to testify on his behalf to the effect that he acted in self defense; (3) Deputy Roberts denied him the right to cross-examine witnesses or to otherwise submit evidence in his defense; and (4) that he did not get a fair and impartial hearing because Deputy Roberts had previously charged Murphy with a minor disciplinary infraction.[11]

---

[9] *Givens Dec.,* at ¶¶ 3-4 and 12-13. *See also Grievance Policy* Exhibit U.
[10] *Amended Complaint*, ECF-15 at page 7 in ¶7.
[11] *See id.* at pages 4 and 5, plus attachments.

3

Murphy appealed his conviction, which was affirmed by Lieutenant Givens. Murphy appears to claim that Givens violated his civil rights by affirming Roberts' decision, and by denying him the right to take a further appeal of his conviction.[12]

## RECORD

Defendants have assembled what they believe to be the evidence that is relevant to the allegations that Murphy has lodged against them. This evidence is contained in the *Appendix to Martinez Report*, and consists of the following matters:

**Exhibit A**: A *Summary of Convictions* received from the Utah Department of Corrections upon Murphy's transfer to the Jail.

**Exhibit B**: The *Travel Order* of March 15, 2019 transferring Murphy to the Jail to serve his sentence.

**Exhibit C**: The Jail's *Minor Inmate Disciplinary Actions Policy*.

**Exhibit D**: The *Incident Report* submitted by Deputy Roberts that resulted in Murphy receiving a minor disciplinary write-up.

**Exhibit E**: The *Incident Report* submitted by Deputy Megan Arias documenting the fight that took place on July 25, 2019 between Murphy and inmate Whipple.

**Exhibit F**: The *Incident Report* submitted by Deputy Ryan Bastian which also documents the fight that took place on July 25, 2019 between inmates Murphy and Whipple.

**Exhibit G**: The *Incident Report* submitted by Deputy Hunter Robinson with respect to the fight that took place on July 25, 2019 between inmates Murphy and Whipple.

**Exhibit H**: A *Supplemental Incident Report* by Deputy Arias further documenting the fight that took place on July 25, 2019 between Murphy and Whipple.

---

[12] *See id.* at page 6.

**Exhibit I**:  An *Investigative Report* by Deputy Arias of the July 25, 2019 fight between Murphy and Whipple which led to both inmates being charged with fighting in violation of Jail Policy B02.

**Exhibit J**:  *Jail Policy B02* under which both Murphy and Whipple were charged with and found guilty of the offense of fighting.

**Exhibit K**:  The *Statement of Charges* filed against Murphy by Deputy Arias related to his fight with Whipple.

**Exhibit L**: A *Statement of Sanctions* that could have been imposed upon Murphy for violating Jail Policy B02.

**Exhibit M**:  The *Record of the Disciplinary Hearing* held by Inmate Disciplinary Hearing Officer Daniel Roberts on August 7, 2019 with respect the charges brought against Murphy, and it includes the evidence offered by Murphy in his defense.

**Exhibit N**:  Inmate Disciplinary Hearing Officer Roberts' *Findings* with respect to Murphy's August 7, 2019 Disciplinary Hearing.

**Exhibit O**:  Inmate Disciplinary Hearing Officer Roberts' *Findings* with respect to the charges brought against inmate Whipple as a result of the fighting incident.

**Exhibit P**: *Investigation Photographs* documenting the injuries sustained by Murphy and Whipple in the July 25, 2019 fight, as well several photographs of the fight scene.

**Exhibit Q**:  The Jail's *Appeal Policy*.

**Exhibit R**: *Murphy's Appeal* from the Inmate Disciplinary Hearing Officer Roberts' *Findings*.

**Exhibit S**:  Jail Commander Travis Givens' *Decision on Murphy's Appeal*.

**Exhibit T**:  Deputy Roberts' *Training Records* with the training that he had received on matters of inmate discipline highlighted in yellow.

**Exhibit U**:  The Jail's *Inmate Grievance Policy*.

**Exhibit V**:  The Jail's *Criminal Violations Screening* that resulted in Murphy being charged by the State of Utah with assault by a prisoner in violation of U.C.A. §76-5-102.5.

**Exhibit W**:  The *Criminal Information* that the State of Utah filed against Murphy charging him with assault by a prisoner in violation of U.C.A. §76-5-102.5.

**Exhibit X**:  The *Judgment of Conviction* that was entered against Murphy on the State criminal charges.

The fight between Murphy and Whipple was captured by a Jail security camera. A copy of that videotaped has been conventionally filed with the Clerk of Court in this case as ECF-28 and 29.[13]

## FACTS

The facts have marshalled and will be separately presented with respect to the Defendants' two encounters with Murphy that form the basis of his allegations/claims against them.

**A. July 17, 2019 Incident**:

1. On July 17, 2019, Deputy Roberts was conducting a security check of F-Block where Murphy and about 20 other inmates were being housed.[14]

2. As a result of that security check, Roberts discovered that some of the Jail inmates

---

[13] Notwithstanding Murphy's assertions to the contrary, that videotape clearly and indisputably shows that Murphy assaulted Whipple, which means that the fight, as depicted on the videotape controls and not Murphy's statements about the event. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Carabajal v. City of Cheyenne, Wyoming*, 847 F.3d 1201, 1207 (10th Cir. 2017).
[14] *Roberts Dec.*, at ¶4.

were storing food items that they had saved from their meals, which for health and safety reasons is not allow by Jail policy. [15]

3. Roberts was in F-Block to remind the inmates housed in that unit of the Jail's policy against keeping food from meals in their cells. [16]

4. When Roberts entered F-Block, he had the Jail's control center announce over the Public address system that all of the inmates in F-Block were to leave their cells and assemble in the common area.[17]

5. The inmates complied with Roberts' order, including Murphy and an inmate named Clark.[18]

6. Once the inmates were assembled in the F-Block common area, Roberts informed them about the Jail policy against saving food.[19]

7. As he started to leave, Roberts heard inmate Clark say that: "This is a fucking joke and bullshit."[20]

8. Roberts was giving Clark a verbal warning about his comments when Murphy became agitated and argumentative and told he Roberts that: "you can't come in here and fucking disrespect me like that." [21]

9. At that time, there were no other corrections officers present in F-Block to support Roberts if he needed help controlling the situation. [22]

---

[15] *Id.* at ¶5.
[16] *Id.* at ¶ 6.
[17] *Id.* at ¶ 7.
[18] *Id.* at ¶ 8.
[19] *Id.* at ¶ 9.
[20] *Id.* at ¶ 10.
[21] *Id.* at ¶ 11.
[22] *Id.* at ¶ 12.

10. Concerned that Clark's and Murphy's open contempt for Roberts' authority might be contagious and ignite some sort of incident, Roberts ordered all of the inmates to return to their cells.[23]

11. Once they were in their cells, Roberts radioed the Jail's control center to lock the doors to their cells.[24]

12. Roberts charged both Murphy and Clark with disorderly conduct and reckless endangerment in violation of Jail Policy B14.[25]

13. Roberts prepared a *Report* of this incident.[26]

14. Because Murphy did not have any prior disciplinary write-ups, Roberts treated this as a minor disciplinary matter under the Jail's *Minor Disciplinary Policy*.[27]

15. As a sanction, Roberts Murphy out of the Jail's general population to H-Block and told Murphy that he would be restricted to his cell for three days and lose his DVD privileges whereby he would no longer be permitted to possess a DVD player in his cell to watch movies.[28]

16. Roberts imposed the same sanctions upon inmate Clark.[29]

17. When Roberts transferred Murphy and Clark to H-Block he placed them in separate cells.[30]

18. Roberts transferred them to H-Block because it is used to house inmates being

---

[23] *Id.* at ¶ 13.
[24] *Id.* at ¶ 14.
[25] *Id.* at ¶ 15.
[26] *Id.* at ¶16. *See also* Roberts' *Incident Report* Exhibit D.
[27] *Roberts Dec.*, ¶ 17.
[28] *Id.* at ¶ 18.
[29] *Id.* at ¶19.
[30] *Id.* at ¶20.

disciplined for violation of Jail policies, there are security cameras in each cell and the cell doors have larger glass panels whereby correction officers can more easily observe/monitor the inmate's behavior to prevent them from harming themselves.[31]

19. The sanctions that Roberts imposed upon Murphy were authorized by the Jail's *Minor Disciplinary Policy,* and they did not add to or otherwise affect his term of incarceration for the crimes for which he was convicted and sentenced. [32]

20. Because this incident was handled under the Jail's *Minor Disciplinary Policy*, the videotape of the July 17, 2019 incident in F-Block was not preserved. [33]

   **B. July 25, 2019 Incident**:

1. Once Murphy had served his three-day confinement sanction in H-Block, he was moved back to F-Block where, on July 25, 2019, he engaged in a fight with Whipple, another F-Block inmate. [34]

2. That fight was recorded on the security camera in F-Block, and because of the seriousness of the incident, which eventually resulted in both participants being charged with a major disciplinary infraction, that videotape was preserved.[35]

3. As a consequence of that fight, Deputy Megan Arias investigated, collected evidence and formally charged both Murphy and Whipple with having violated Jail Policy B02, which prohibited fighting.[36]

---

[31] *Id.* at ¶ 21.
[32] *Id.* at ¶ 22. See also Exhibit C *Minor Inmate Disciplinary Policy* ¶D 07.02.02.
[33] *Roberts Dec.*, at ¶ 23.
[34] *Id.* at ¶28.
[35] *Id.* at ¶ 29. *See also* Videotape ECF-29.
[36] *Id.* at ¶ 30, *Statement of Charges* Exhibit K, and *Arias Investigation Report* Exhibit I. *See also* Arias *Incident Report* Exhibit E, *Bastian Incident Report* Exhibit F, *Robinson Incident Report* Exhibit G, *Arias Supplemental* Exhibit H, *Investigation Photographs* Exhibit P.

4. As the Inmate Disciplinary Hearing Officer, Roberts was tasked with hearing the evidence and deciding the charges that had been brought by Deputy Arias against Murphy and Whipple.[37]

5. In the prosecution of the charges that she had filed against Murphy, Deputy Arias submitted the reports that officers had filed concerning the fight, photographs showing the injuries sustained by the participants as well as the fight scene and, most importantly, the videotape of the fight.[38]

6. With the exception of the videotape of the fight which does not have sound and has been conventionally filed of record in this case as ECF-28 and 29, the other evidence submitted by Deputy Arias in the prosecution of the charges against Murphy appear as Exhibits E through I and P of the *Appendix* to the court-ordered *Martinez Report*.[39]

7. On August 7, 2019, Roberts heard the charge of fighting that had been filed by Deputy Arias against Murphy.[40]

8. Murphy was present at that hearing, Roberts read the charges to him, Murphy stated that he understood the charges, and Roberts recorded Murphy's "not guilty plea."[41]

9. Roberts then presented the evidence that Deputy Arias had gathered to Murphy and asked Murphy for his response, including receiving the documents that Murphy submitted in defense consisting of several pages from an article supposedly written by a Professor Kyle

---

[37] *See Roberts Dec.*, at ¶ 31.
[38] *Id.* at ¶ 32.
[39] *Id.* at ¶ 33.
[40] *Id.* at ¶ 34.
[41] *Id.* at ¶ 35. *See also Record of Disciplinary Hearing* Exhibit M.

Hancock on self-defense and Murphy's handwritten statement about his fight with inmate Whipple.[42]

10. Inmates are permitted to call witnesses to testify as part of their defense to disciplinary charges brought against them provided those witnesses do not pose a threat to Jail security, have relevant testimony and are available and willing to testify since the Jail has no power to subpoena them.[43]

11. Murphy asked to have two witnesses testify on his behalf: Dr. Hancock and Utah Attorney General Sean Reyes.[44]

12. According to Murphy, these witnesses would provide testimony in support of his claim that he acted in self-defense by engaging in a fight with inmate Whipple.[45]

13. Roberts denied Murphy's request to call Dr. Hancock and Attorney General Reyes for the following, among other, reasons: (a) neither of these witnesses had any relevant testimony to offer since they had no knowledge of the circumstances of the fight between Murphy and inmate Whipple; (b) Roberts had no way to compel their attendance at the hearing; (c) Murphy's claim that he acted in self-defense was not relevant to the charge of having engaged in a fight with inmate Whipple since it was a mutual combat situation; and (d) the videotape clearly showed that Murphy had been the aggressor insofar as he had attacked inmate Whipple.[46]

14. Roberts prepared a *Record of the Disciplinary Hearing,* which also contains the

---

[42] *Roberts Dec.,* at ¶ 36.
[43] *Id.* at ¶ 37.
[44] *Id.* at ¶ 38.
[45] *Id.* at ¶ 39.
[46] *Id.* at ¶ 40.

evidence that Murphy presented to Roberts.[47]

15. Roberts found Murphy "Guilty" of the offense of fighting with another inmate, and sanctioned him with a $200.00 fine and 20-days of isolation in H-Block, which were among the sanctions that he was permitted to impose upon him pursuant to Jail policy.[48]

16. Roberts prepared written *Findings* with respect to his ruling.[49]

17. In a separate hearing, Roberts also found inmate Whipple guilty of the fighting charges that Deputy Arias had filed against him, imposed the same sanctions upon him as Roberts had imposed upon Murphy, and Roberts likewise prepared *Findings* in the Whipple matter.[50]

18. As an Inmate Disciplinary Hearing Officer, Roberts was expected to and did function independently from his superiors at the Jail, including the Sheriff and Jail Commander, who did not become involved in his hearing of disciplinary charges brought against inmates or direct him as to how he was to decide those cases.[51]

19. Roberts does not recall that Murphy challenged or otherwise questioned his impartiality prior to or during the hearing that he conducted and, had Murphy done so, it would have been noted by Roberts in his *Record of the Disciplinary Hearing* and/or *Findings* and it is not so noted in either document.[52]

20. Including Roberts, in July of 2019, there were two Inmate Disciplinary Hearing

---

[47] *Id.* at ¶ 41. *See also Record of Disciplinary Hearing* Exhibit M.
[48] *Id.* at ¶¶ 41 and 42. *See also Statement of Sanctions* for major disciplinary infractions Exhibit L.
[49] *Roberts Dec.*, at ¶43. *See also* Murphy *Findings* Exhibit N.
[50] *Roberts Dec.*, at ¶ 44. *See also* Whipple *Findings* Exhibit O.
[51] *Roberts Dec.*, at ¶ 45.
[52] *Id.* at ¶ 46.

Officers at the Jail so that when a conflict existed Roberts could and did refer the matter to the other Hearing Officer. [53]

21. Moreover, even if Murphy had questioned Roberts' impartiality Roberts would not have recused himself from hearing and deciding Murphy's case since Roberts had no involvement in the fight incident, the investigation of that incident or the bringing of charges against him as a result of that fight.[54]

22. Furthermore, the fact that Roberts had previously written-up Murphy on the minor disciplinary matter played no role, either directly or indirectly, in Roberts having found Murphy guilty of fighting. Besides, over the course of his career Roberts had written-up many inmates for similar minor disciplinary matters and there was nothing unusual or significant about his having done so in Murphy's case. [55]

23. Murphy appealed from Roberts's ruling. [56]

24. Lieutenant Givens heard and decided the appeal lodged by Murphy from his conviction for engaging in fighting or horseplay in violation of Jail Policy B02. [57]

25. In doing so, Lieutenant Givens reviewed and considered Roberts' *Findings* as well as the arguments and evidence that Murphy had submitted in his defense. [58]

26. Lieutenant Givens also reviewed and considered the arguments advanced by Murphy in support of his appeal. [59]

27. On August 14, 2019, Lieutenant Givens issued his written decision denying

---

[53] *Id.* at ¶ 47.
[54] *Id.* at ¶ 48.
[55] *Id.* at ¶ 49.
[56] *See Murphy Appeal* Exhibit R.
[57] *Givens Dec.*, at ¶¶ 4 and 5.
[58] *Id.* at ¶6.
[59] *Id.* at ¶7. *See also Murphy Appeal* Exhibit R.

Murphy's appeal and affirming both his conviction and the sanctions imposed upon him by Inmate Disciplinary Hearing Officer Roberts as a result of that conviction.[60]

28. Lieutenant Givens' written decision was served upon Murphy.[61]

29. Lieutenant Givens denied Murphy's appeal because his right to due process had not been violated, Inmate Disciplinary Hearing Officer Roberts' *Findings* were substantially supported by the requisite "some evidence" standard of proof, and the disciplinary sanctions imposed upon Murphy by Roberts were neither unconstitutionally harsh nor unreasonably light insofar as they fit well between the minimum and maximum allowed.[62]

30. Lieutenant Givens refused to refer Murphy's appeal to an Administrative Law Judge for further review because, in Givens' opinion, Murphy had received due process, Inmate Disciplinary Hearing Officer Roberts' *Findings* were based on a proper standard of proof, and the sanctions imposed upon Murphy as a result of his having been found "guilty" of "fighting" in violation of Jail Policy B02 were neither unconstitutionally harsh nor unreasonably light.[63]

31. Murphy could have appealed and/or grieved Lieutenant Givens' decision not to refer Murphy's appeal to an Administrative Law Judge to Sheriff David Boren for additional review, but Murphy did not do so.[64]

32. Murphy may have elected to forego an appeal to Sheriff Boren from Lieutenant Givens' decision not to refer his appeal to an Administrative Law Judge for additional review because two-weeks earlier on, July 30, 2019, as a result of his fight with inmate Whipple,

---

[60] *Id.* at ¶8. *See also Decision on Murphy Appeal* Exhibit S.
[61] *Id.* at ¶9.
[62] *Id.* at ¶10. *See also Decision on Murphy Appeal* Exhibit S.
[63] *Givens Dec.,* at ¶11. *See also Decision on Murphy Appeal* Exhibit S.
[64] *Givens Dec.*, at ¶12. *See also Inmate Grievance Policy* Exhibit U.

Murphy had been charged by the State of Utah with the crime of assault by a prisoner in violation of U.C.A. § 76-5-102.5, a third-degree felony.[65]

33. Murphy pled guilty to the State charge and a *Judgment of Conviction* was entered against him on May 20, 2020 whereby he received a sentence of six months with credit for time served.[66]

## CONCLUSION

In accordance with the Court's *Memorandum Decision and Order*,[67] Defendants will file a *Motion for Summary Judgment* after Murphy's allotted time for responding to this *Martinez Report* has expired.

DATED this 7th day of February, 2022.

                                                  SUITTER AXLAND, PLLC

                                                  /s/ jesse c. trentadue
                                                  Michael W. Homer
                                                  Jesse C. Trentadue
                                                  *Attorneys for Defendants*

---

[65] *See Criminal Information* Exhibit W.
[66] *See Judgment of Conviction,* Exhibit X.
[67] ECF-17.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 7th day of February, 2022 I electronically filed the foregoing **MARTINEZ REPORT** with the Clerk of the Court using the ECF filing system, and mailed a copy to:

Anthony Charles Murphy
Utah State Prison
Inmate No. 224574
P.O. Box 250
Draper, Utah 84020
*Pro Se Plaintiff*

    /s/ jesse c. trentadue