IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ANTHONY CHARLES MURPHY,<br><br>Plaintiff,<br><br>v.<br><br>STG. D. ROBERTS; LT. TRAVIS GIVENS,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:19-cv-00852-JNP<br><br>District Judge Jill N. Parrish |

Before the court is a motion for summary judgment filed by the remaining defendants in this case, Daniel Roberts and Travis Givens (collectively, "Defendants"). ECF No. 64 ("Defs.' Mot."). Plaintiff Anthony Charles Murphy ("Plaintiff" or "Murphy") filed this action alleging Defendants violated his constitutional rights under 42 U.S.C. § 1983. For the reasons set forth herein, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

On a motion for summary judgment, the court must "view the evidence and make all reasonable inferences in the light most favorable to the nonmoving party." *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008). Thus, in recounting the background of the case at this stage, the court will resolve all factual disputes in favor of Plaintiff.

This action stems from Plaintiff's incarceration in the Duchesne County Jail ("the Jail"). Plaintiff was transferred there on March 15, 2019. He was housed in F-Block, a 12-cell dormitory. Plaintiff alleges two incidents occurred in which the Jail staff violated his constitutional rights. He

maintains that these incidents led to the only disciplinary write-ups he has ever received while incarcerated.

The first incident occurred on July 17, 2019. Defendant Roberts called the inmates in F-Block to gather in the common room area. Plaintiff complied with the request. Roberts notified the inmates of the Jail's policy against storing food in their cells. At the end of Roberts' speech, another inmate, Clark, said "Is that why you called us to the tables?" ECF No. 71-1 ("Murphy Decl.") ¶ 9. Roberts responded, "I'm not going to put up with any smartass comments. I can call you to the tables any damn time I want!" *Id.* ¶ 12. Plaintiff then told Roberts, "Mr. Roberts, you don't have to come in here and speak to us like that." *Id.* ¶ 15. When Roberts began to interrupt Plaintiff, Plaintiff said, "Sir, you need to check yourself." *Id.* Roberts then ordered all the inmates to return to their cells. ECF No. 30-1 ("Roberts Decl.") ¶ 12. During the incident, Roberts was the only corrections officer present in F-Block. *Id.* ¶ 11.

Following the incident, Roberts charged Plaintiff and Clark with disorderly conduct and reckless endangerment. *Id.* ¶ 14. Plaintiff was subsequently moved to H-Block. While in H-Block, Roberts came to see Plaintiff saying, "You said some things, I said some things. This is a non-disciplinary cool down." Murphy Decl. ¶ 21. Thus, Plaintiff did not grieve the incident.

During the three days Plaintiff was living in H-Block, Jail staff searched F-Block and confiscated two DVD players belonging to Plaintiff's cellmate, Melvin Whipple. Witnesses reported that Whipple blamed Plaintiff and was threatening to harm him since the F-Block search. ECF No. 31, Exhibit H ("Arias Supplemental Incident Report"), at 3. After three days in H-Block, Roberts asked Plaintiff if he had any problem moving back to F-Block. At this point, Plaintiff did not know about the search or the tension in F-Block. Plaintiff said he did not have any problems and was moved back to F-Block that day into a cell next to Whipple. Roberts then served Whipple

a major disciplinary write-up for having contraband, in front of Plaintiff's cell. Whipple became upset, expressing that he didn't deserve the disciplinary action.

A few days later, on July 25, 2019, Plaintiff was walking past a table where Whipple was sitting. Although Plaintiff had tried to avoid Whipple the past few days, he had to walk past Whipple to get back to his cell. When Plaintiff walked by Whipple, Whipple said something to Plaintiff that sounded like, "You piece of shit!" *Id.* ¶ 37. Plaintiff stopped to ask Whipple what he said. Then Whipple said to Plaintiff, "I'm going to kill you." *Id.* Plaintiff took this as a threat on his life and punched Whipple. Plaintiff maintains that the punch was in self-defense as not responding to a threat in that environment would have made him a bigger target.

Following the incident, Plaintiff was investigated and eventually charged with a major disciplinary action for violating Jail policy that prohibits fighting. Deputy Megan Arias investigated the incident, but Roberts conducted Plaintiff's disciplinary hearing. Plaintiff asked to call Dr. Hancock and Utah Attorney General Sean Reyes to testify on his behalf at the hearing. Roberts denied both requests, reasoning that

> (a) neither of these witnesses had any relevant testimony to offer since they had no knowledge of the circumstances of the fight between Murphy and inmate Whipple; (b) I had no way to compel their attendance at the hearing; (c) Murphy's claim that he acted in self-defense was not relevant to the charge of having engaged in a fight with inmate Whipple since it was a mutual combat situation; and (d) the videotape clearly showed that Murphy had been the aggressor insofar as he had attacked inmate Whipple.

Roberts Decl. ¶ 39. Roberts then found Plaintiff guilty of the offense charged. Murphy received a $200 fine and 20-days of isolation in H-Block. Plaintiff appealed Roberts' decision. The appeal was denied by Defendant Lieutenant Travis Givens on August 14, 2019. ECF No. 30-2 ("Travis Decl.") ¶ 8. Givens also declined to refer the appeal to an administrative law judge for further

review, reasoning that Plaintiff received due process, Roberts' findings were based on "some evidence," and the sanctions imposed were neither "unconstitutionally harsh nor unreasonably light." *Id.* ¶ 11.

Based on the facts surrounding the July 17 and July 25 incidents, Plaintiff claims that Defendants violated (1) the First Amendment by retaliating against him for protected speech, (2) the Eighth Amendment by failing to protect him, and (3) the Due Process Clause by failing to provide him with an impartial decisionmaker in his hearing. Plaintiff also alleges Defendants violated the Equal Protection Clause and Confrontation Clause, but do not specifically explain how. Defendants move for summary judgment on Plaintiff's constitutional claims, arguing that there is no dispute of fact that Defendants did not violate Plaintiff's constitutional rights. Defendants also allege affirmative defenses of exhaustion and quasi-judicial immunity.

## LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is material only if it might affect the outcome of the suit under the governing law. And a dispute over a material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1186 (10th Cir. 2016) (internal quotation marks omitted).

Once the movant has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When applying the summary-judgment standard, the court must "view

the evidence and make all reasonable inferences in the light most favorable to the nonmoving party." *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008). The court must grant summary judgment on a claim if the party bearing the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## ANALYSIS

The court first addresses Defendants' affirmative defenses of exhaustion and quasi-judicial immunity. Concluding Plaintiff's action is not barred by either affirmative defense, the court then considers Plaintiff's substantive claims.

### I. AFFIRMATIVE DEFENSES

Defendants offer two affirmative defenses to Plaintiff's lawsuit. First, they argue that Plaintiff's action is barred because he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(a). Second, Defendants contend that they are entitled to quasi-judicial immunity. The court addresses each affirmative defense below.

#### A. Administrative Exhaustion

Defendants first argue that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(a) (providing that a plaintiff seeking relief under 42 U.S.C. § 1983 or any other federal law may not bring an action "until such administrative remedies as are available are exhausted."). Failure to exhaust is an affirmative defense that Defendants must allege and prove. *See Jones v. Bock*, 549 U.S. 199, 204 (2007). And the rules of exhaustion are defined not by the Prison Litigation Reform Act, but by the prison grievance process itself. *See id.* at 218. Thus, Defendants must first show grievance procedures are available under their policy before arguing that Plaintiff failed to exhaust them.

Defendants argue that Plaintiff failed to exhaust his administrative remedies by not appealing or grieving Givens' decision to not refer Plaintiff's appeal to an administrative law judge ("ALJ"). But Defendants fail to identify a policy that allows an inmate to appeal an ALJ referral denial. Rather, Defendants broadly assert that "Givens' decision to not refer an inmate's appeal from a disciplinary sanction imposed upon them to an Administrative Law Judge was still reviewable by the Sheriff under the Jail's *Grievance Policy*." Defs.' Mot. at 17 (citing ECF No. 30-2 ("Givens Decl.") ¶ 12; ECF No. 31, Exhibit Q ("Grievance Policy")). Notably, Defendants do not point to any specific section of the Grievance Policy; they only cite the exhibit.

The Jail's Grievance Policy states, "The Jail Commander/designee is the final level of appeal." Grievance Policy 5.01.07(C)(3). Defendants' Appeal Policy also provides, "Appeals shall be forwarded to the Jail Commander/designee. This step will be the last stage in the Appeal Process." ECF No. 31, Exhibit Q ("Appeal Policy"). Givens was the Jail Commander during Plaintiff's disciplinary process. Givens Decl. ¶ 3. Plaintiff appealed Roberts' disciplinary decision to Givens. *Id.* ¶ 5. Under Defendants' policies, Plaintiff's appeal to Givens would be the last step in the appeal process. And Defendants provide no further argument to the contrary. Therefore, Defendants have not carried their burden of showing that Plaintiff failed to exhaust all available administrative remedies.

    **B.    Quasi-Judicial Immunity**

Next, Defendants argue they are entitled quasi-judicial immunity for their actions that are "functionally equivalent to those of judges." Defs.' Mot. at 30. Defendants contend that "Roberts' duties as an Inmate Disciplinary Hearing Officer were quasi-judicial in nature insofar as he adjudicated major disciplinary charges that had been brought or filed against Jail inmates." *Id.* Defendants also argue that Travis is entitled to immunity for his duties as Jail Commander. *Id.*

"The Supreme Court has long recognized that officials in administrative hearings can claim the absolute immunity that flows to judicial officers if they are acting in a quasi-judicial fashion." *Guttman v. G.T.S. Khalsa*, 446 F.3d 1027, 1033 (10th Cir. 2006). But entitlement to immunity requires a showing of three elements: (1) "the officials' functions must be similar to those involved in the judicial process," (2) "the officials' actions must be likely to result in damages lawsuits by disappointed parties," and (3) "there must exist sufficient safeguards in the regulatory framework to control unconstitutional conduct." *Id.*

In *Cleavinger v. Saxner*, the Supreme Court denied quasi-judicial immunity to a prison discipline committee because the committee members were not professional hearing officers like administrative law judges. 474 U.S. 193, 203-204 (1985). Rather, they were primarily "prison officials . . . temporarily diverted from their usual duties." *Id.* at 204. Thus, the Court held that the prison's administrative disciplinary process did not have sufficient safeguards required for immunity. The Court noted that the prison officials serving in a disciplinary hearing capacity were still

> employees of the Bureau of Prisons and they are the direct subordinates of the warden who reviews their decision. They work with the fellow employee who lodges the charge against the inmate upon whom they sit in judgment. The credibility determination they make often is one between a co-worker and an inmate. They thus are under obvious pressure to resolve a disciplinary dispute in favor of the institution and their fellow employee. It is the old situational problem of the relationship between the keeper and the kept, a relationship that hardly is conducive to a truly adjudicatory performance.

*Id.* The court finds Defendants exhibit the same qualities as the members of the disciplinary committee in *Cleavinger*. Although Roberts was trained as an Inmate Disciplinary Hearing Officer, he is not trained in the law. His role as an Inmate Disciplinary Hearing Officer is a

collateral responsibility, not his primary job. And, more importantly, he was personally involved in the incidents that gave rise to the charges against Plaintiff. Therefore, Defendants' administrative hearing process does not have the same safeguards as those adjudicatory processes that give rise to quasi-judicial immunity. Plaintiff's disciplinary hearing was not conducted by a "neutral and detached hearing body." *Id.* (declining to equate the prison discipline committee to a traditional parole board). Therefore, Defendants are not entitled to quasi-judicial immunity.

Concluding that Defendants have not carried their burden of showing Plaintiff failed to exhaust his administrative remedies or that they are entitled to quasi-judicial immunity, the court turns to the merits of Plaintiff's claims.

## II. PLAINTIFF'S CONSTITUTIONAL CLAIMS

Plaintiff alleges Defendants violated (1) the First Amendment by retaliating against him for constitutionally protected speech, (2) the Eighth Amendment by failing to protect him, (3) the Due Process Clause by placing him in solitary confinement and failing to provide him with an impartial decisionmaker, (4) the Equal Protection Clause, and (5) the Confrontation Clause by rejecting Plaintiff's request for witnesses at his disciplinary hearing. Defendants move for summary judgment on the two incidents that occurred on July 17 and July 25, arguing that there is no dispute of fact Defendants did not violate Plaintiff's constitutional rights on either occasion. The court addresses each claim but will analyze the claims as they relate to the facts of each incident where necessary.

In his response to Defendants' motion, Plaintiff noted that he is no longer pursuing his equal protection claim. ECF No. 71 ("Pl.'s Opp.") at 29. And, as Defendants argue, there is no evidence in the record from which a reasonable juror could conclude Plaintiff was treated differently from others similarly situated. *See SECSYS, LLC v. Vigil*, 666 F.3d 678, 688 (10th Cir.

2012) (holding that a plaintiff raising a class of one claim must "show he or she (as opposed to a class in which he is a member) was intentionally treated differently from others similarly situated" (internal quotation marks omitted)). Therefore, the court GRANTS Defendants' motion for summary judgment on Plaintiff's claim under the Equal Protection Clause.

### A. First Amendment

Plaintiff alleges that Defendants retaliated against him for the exercise of his First Amendment rights. To demonstrate a retaliation claim under the First Amendment, Plaintiff must show

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

Defendants argue only that Plaintiff was not engaged in constitutionally protected speech. They do not address the other elements of a First Amendment retaliation claim. The Tenth Circuit has recognized that "[a]n inmate does not have a First Amendment right to make violent, explicit, or harassing statements." *Turner v. Falk*, 632 Fed. Appx. 457, 460 (10th Cir. 2015). But there is a dispute of fact as to whether Plaintiff's speech was violent, explicit, harassing, or even backtalk as Defendants claim. According to Plaintiff, he simply "expressed a concern about how a government employee was performing his duties and treating a group of inmates." Pl.'s Opp. at 23. Essentially, Plaintiff maintains that he was submitting an informal grievance to a prison official. And the Tenth Circuit has repeatedly recognized that filing a grievance constitutes protected speech under a retaliation claim. *See Johnson v. Whitney*, 723 Fed. Appx. 587, 594 (10th Cir. 2018) (holding that

9

the plaintiff's "filing of a grievance qualifie[d] as protected activity under the first element [of a First Amendment retaliation claim]"); *Dawson v. Audet*, 636 Fed. Appx. 753, 755 (10th Cir. 2016) ("Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights. In particular, officials may not retaliate against prisoners for filing administrative grievances." (internal quotation marks omitted)); *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (finding that if prison officials retaliated against the plaintiff based on his filing of an administrative grievance, they may be liable for a constitutional rights violation.); *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (finding the plaintiff had adequately set forth the first element of a First Amendment retaliation claim in which he alleged the defendants had retaliated against him because he filed grievances against them).

Further, a jury could find, from the evidence in the record, that Plaintiff was grieving how the inmates in F-Block were being treated by Roberts. In his declaration, Plaintiff alleges that Roberts had no reason to call the inmates to the tables. Plaintiff politely requested Roberts refrain from speaking to the inmates in disrespectful tone. Roberts responded by charging Plaintiff with disorderly conduct and reckless endangerment and placing him in solitary confinement. A jury could find that the injury Plaintiff suffered, the charge and solitary confinement, would chill a person of ordinary firmness from addressing a grievance in the future. And because these consequences directly stemmed from the July 17 incident, a jury could also conclude that the adverse action was substantially motivated by Plaintiff's exercise of protected speech.

Defendants argue that Plaintiff's speech did not address a grievance. Rather, the speech challenged Roberts' authority. But this is a dispute of fact that must be left for the jury. Defendants do not offer any argument regarding the second or third element of a First Amendment claim. Thus,

the court DENIES Defendants' motion with respect to Plaintiff's First Amendment claim as Defendants have failed to carry their burden to warrant summary judgment.

### B. Eighth Amendment

Next, the court turns to Plaintiff's claim under the Eighth Amendment. Plaintiff argues that Defendants violated his Eighth Amendment rights by failing to protect him from other inmates. In his Amended Complaint, Plaintiff alleges that Roberts "asked Murphy if he was ok to go back to F-block without informing Murphy of inmate Whipple's threats against Murphy. Roberts knew Whipple hated Murphy and that he blamed Murphy for retaliatory shake down resulting in Whipple's loss of his DVD player and write up." ECF no. 15 ("Pl.'s Compl.") at 4.

To prove a claim under the Eighth Amendment, "an inmate must show that he was exposed to an objective risk of serious harm and that prison officials subjectively acted with deliberate indifference to inmate health or safety." *Valentine v. Collier*, 141 S. Ct. 57, 60 (2020). A prison official acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health or safety." *Johnson v. Prentice*, 144 S. Ct. 11, 14 (2023). Thus,

> proper application of the deliberate-indifference standard when evaluating a prison official's motion for summary judgment requires consideration of two factbound factors: first, whether the [] deprivation at issue posed a substantial risk to the prisoner's health or safety, and second, whether prison officials 'knowingly and unreasonably disregard[ed]' that risk of harm.

*Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 845-46 (1994)).

Defendants argue that Plaintiff has not met either element to prove deliberate indifference. First, they maintain that "[t]here is no evidence that Roberts' decision to return Murphy to F-Block posed a risk of him being assaulted . . ." ECF No. 75 ("Defs.' Reply") at 21. But the fact that Plaintiff got into a fight with an inmate who was prone to aggression demonstrates that his return

11

to F-Block *did* pose a high risk of harm. Further, when viewing the evidence in the light most favorable to Plaintiff, a jury could find that Whipple's threat to kill Plaintiff in and of itself posed an objective, substantial risk of harm to Plaintiff's safety. If Plaintiff had not been moved back to F-Block, the confrontation between Whipple and Plaintiff would have never occurred. And even if it is indisputable that Plaintiff threw the first punch in the surveillance video, this does not preclude a jury finding that Roberts set Plaintiff up to be threatened by Whipple and put in a situation in which a fight was bound to happen.

Second, Defendants argue that "there is no evidence that Roberts recognized Murphy faced a substantial risk of serious harm in being placed back into F-Block." *Id.* The court disagrees. Given the evidence offered by Plaintiff, a jury could find that Roberts knew of the high risk of confrontation between Whipple and Plaintiff after the DVD incident. Whipple was known to have a temper. In his declaration, Plaintiff alleges that, although he had not previously had any issues with Whipple, Whipple had "a temper and everyone knew he sometimes got into arguments with other inmates." Murphy Decl ¶ 28. Further, multiple witnesses reported that Whipple had been threatening to harm Plaintiff ever since the search in F-Block. If everyone knew this, it is likely Roberts knew this as well. From the evidence in the record, including Plaintiff's declaration and reports of the incident, a reasonable juror could infer that Roberts knew of a significant risk of harm posed by Plaintiff's return to F-Block. Thus, a jury could find that in allowing Plaintiff to return to F-Block, knowing the situation and Whipple's disposition, Roberts was deliberately indifferent to a substantial risk of harm to Plaintiff.

Plaintiff has demonstrated a dispute of fact regarding the objective risk of harm posed to him in returning to F-Block as well as Roberts' subjective knowledge of that risk. The court thus

12

DENIES Defendants' motion for summary judgment with respect to Plaintiff's Eighth Amendment claim.

### C. Due Process Clause

Defendants next argue that they did not violate Plaintiff's due process rights during the July 17 incident or the July 25 incident. The court addresses each of these incidents and concludes, as a matter of law, Plaintiff's due process rights were not violated when Defendants moved him to H-Block. But there remains a dispute of fact as to whether Plaintiff's rights were violated during his disciplinary hearing following the July 25 incident. The court addresses each incident below.

#### 1) July 17, 2019 Incident

Defendants also argue that Plaintiff's due process rights were not violated in the July 17 incident because he had no constitutionally-protected liberty or property interest in remaining in general population. Defs.' Mot. at 19. "[W]hile prisoners do not generally have a liberty interest in particular classifications and housing assignments, a state-created liberty interest could arise from prison regulations that either extend the duration of confinement or impose 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Vue v. Dowling*, 2023 U.S. App. LEXIS 8720, at *6 (10th Cir. 2023) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The Tenth Circuit has articulated four relevant, nondispositive factors to determine whether conditions of confinement give rise to a state-created liberty interest: "whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement; and (4) the placement is indeterminate." *Estate of DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1342 (10th Cir. 2007).

Defendants argue that there is no dispute of fact Plaintiff's conditions in H-Block did not present atypical or significant hardship because the confinement served a disciplinary interest, and his segregation did not add to the time of confinement. The court agrees the segregation did not add to the time of confinement. And, although Defendant does not address the fourth factor, it also indisputably weighs in favor of finding no liberty interest because Plaintiff's confinement only lasted three days. But in viewing the record in the light most favorable to Plaintiff, a jury may conclude that confinement in H-Block served no penological interest; rather, it served a retaliatory purpose, increasing tension between Plaintiff and his fellow inmates in response to Plaintiff's exercise of free speech.

Still, even if Plaintiff's move to H-Block served no legitimate penological interest, there is simply no evidence in the record from which the trier of fact could conclude Plaintiff's segregation posed an atypical or significant hardship. The only facts Plaintiff offers to show his conditions were extreme is that he was in "solitary confinement" with "no company, and minimal time outside his cell." Pl.'s Opp. at 27. As a matter of law, the fact that an inmate is put in solitary is not enough to support those conditions of confinement are extreme. *See Grisson v. Roberts*, 902 F.3d 1162, 1170 (10th Cir. 2018) (finding that the plaintiff did not have a liberty interest in being released from solitary confinement); *see also Stallings v. Werholtz*, Fed. Appx. 841, 845 (10th Cir. 2012) ("We do not find these conditions [in solitary] to be extreme. Because the conditions [the plaintiff] describes are substantially similar to conditions experienced in any solitary confinement setting, this factor weighs against finding a liberty interest."). And nothing in the record indicates that the conditions in H-Block were anything but "substantially similar to conditions experienced in any solitary confinement setting." *Rezaq v. Nalley*, 677 F.3d 1001, 1015 (10th Cir. 2012). Thus, the second factor also weighs against finding a liberty interest.

14

Even if Plaintiff's move to H-Block served no penological interest, the sum total of the evidence cannot support a finding that the conditions in H-Block presented Plaintiff with an atypical or significant hardship. Therefore, the court GRANTS Defendants' motion for summary judgment with respect to Plaintiff's due process claim relating to his confinement in H-Block.

### 2) *July 25, 2019 Incident*

The court next turns to Plaintiff's due process claim relating to the July 25 incident. Plaintiff argues that his due process rights were violated during the Jail's disciplinary hearing process because Defendants failed to provide him with an impartial hearing officer. Defendants respond that Plaintiff's due process rights were not violated because "he received notice, a hearing and an appeal prior to being disciplined . . ." Defs.' Mot. at 4. Further, Defendants argue that Roberts was necessarily impartial because he was trained in how to avoid conflicts of interest. *See id.* at 26. They also contend that "the fact that Roberts had previously written-up Murphy on a prior unrelated minor disciplinary matter played no role, either directly or indirectly, in Roberts having found Murphy guilty of fighting." *Id.* at 27. But a jury could find otherwise.

The facts taken in the light most favorable to Plaintiff paint a picture of a correctional officer who retaliated against an inmate for protected speech. That retaliation included confining the inmate to H-Block for three days and then willfully encouraging another inmate with known anger issues to start a fight with Plaintiff. Plaintiff has also offered evidence demonstrating Roberts may have been a biased decisionmaker in the disciplinary hearing. Roberts was involved in the July 17 incident as well as Whipple's disciplinary infraction that started the fight. In making all reasonable inferences in favor of Plaintiff, a jury could find that Roberts knowingly created the situation that led to Plaintiff's disciplinary infraction. If a jury finds this is true, Roberts could not have been an unbiased decisionmaker, thereby violating Plaintiff's right to due process. Therefore,

the court DENIES Defendants' motion for summary judgment with respect to Plaintiff's due process claim relating to the disciplinary hearing he received following the fight with Whipple.

### D. Confrontation Clause

Finally, Defendants move for summary judgment on Plaintiff's confrontation clause claim, arguing that Plaintiff was not entitled to call Attorney General Sean Reyes or Dr. Kyle Hancock as witnesses in his disciplinary hearing. Indeed, "[t]he scope of a prisoner's right to call and confront witnesses is committed to the sound discretion of prison officials. Officials may deny this right if they are convinced its exercise would threaten legitimate penological interests." *Ramer v. Kerby*, 936 F.2d 1102, 1104 (10th Cir. 1991). Roberts denied Plaintiff's request to call these witnesses because

> (a) neither of these witnesses had any relevant testimony to offer since they had no knowledge of the circumstances of the fight between Murphy and inmate Whipple; (b) [he] had no way to compel their attendance at the hearing; (c) Murphy's claim that he acted in self-defense was not relevant to the charge of having engaged in a fight with inmate Whipple since it was a mutual combat situation; and (d) the videotape clearly showed that Murphy had been the aggressor insofar as he had attacked inmate Whipple.

Roberts Decl. ¶ 39. The fact that Roberts denied Plaintiff's request to call these witnesses because (1) they would not have provided relevant testimony and (2) Roberts had no way to compel their attendance serves a legitimate penological interest—efficiency and order in the prison disciplinary process. And Plaintiff has not offered any evidence or argument to show that Roberts' denial did not serve such an interest. Therefore, the court GRANTS Defendants' motion for summary judgment on Plaintiff's confrontation clause claim.

**CONCLUSION AND ORDER**

For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**:

(1) The court DENIES Defendants' motion for summary judgment with respect to Plaintiff's First Amendment claim;

(2) The court DENIES Defendants' motion for summary judgment with respect to Plaintiff's Eighth Amendment claim;

(3) The court GRANTS IN PART and DENIES IN PART Defendants' motion for summary judgment with respect to Plaintiff's Due Process Clause claim. The court finds there is no dispute of fact that Defendants did not violate Plaintiff's due process rights for confining him to H-Block but there are triable issues of fact regarding whether Defendants violated due process by failing to provide Plaintiff with an impartial decisionmaker in his disciplinary hearing.

(4) The court GRANTS Defendants' motion for summary judgment with respect to Plaintiff's Equal Protection Clause claim;

(5) The court GRANTS Defendants' motion for summary judgment with respect to Plaintiff's Confrontation Clause claim.

DATED March 24, 2025

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge